```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF MICHIGAN
                      SOUTHERN DIVISION
```

DENNIS J. CLARK

       Plaintiff,                  CIVIL ACTION NO. 04-CV-73742-DT

  v.                           DISTRICT JUDGE JULIAN A. COOK

                               MAGISTRATE JUDGE DONALD A. SCHEER

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**RECOMMENDATION**: Plaintiff's Motion for Summary Judgment should be **DENIED**, and that of Defendant **GRANTED**, as there was substantial evidence on the record that claimant retained the residual functional capacity for a limited range of unskilled, light work.

                    *    *    *

Plaintiff filed an application for Social Security disability insurance benefits on October 17, 2002, alleging that he had become disabled and unable to work on October 23, 2001, at age 40, due to severe joint pain, shortness of breath, chest pain and emotional difficulties. Benefits were denied, initially and upon reconsideration, by the Social Security Administration. A requested <u>de novo</u> hearing was held on December 10, 2003, before Administrative Law Judge (ALJ) Larry Meuwissen. The ALJ found that the claimant retained the residual functional capacity to perform a limited range of unskilled, light work. The Appeals Council declined to review that decision and Plaintiff commenced the

instant action for judicial review of the denial of benefits.  The parties have filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

Plaintiff was 42 years old at the time of the administrative hearing (TR 529).  He had earned the equivalent of a high school education, and had been employed as a restaurant cook and truck driver during the relevant past (TR 71, 78, 531).  Both jobs required claimant to remain on his feet for most of the workday.  Plaintiff had to constantly bend down and reach over his head.  He was required to lift upwards of 50 pounds on a regular basis (TR 79, 82). Claimant alleged that he was unable to work since October 2001,[1] due to severe joint pain and a heart condition (TR 531).  He noted that he suffered a heart attack in 1995, and underwent two catheterizations to help alleviate swelling in his feet and night sweats (TR 545-547).

Claimant estimated that he could stand for only 20 minutes at a time, walk about 100 yards, and lift just 10 pounds.  Back and right knee pain allegedly prevented him from standing and walking for prolonged periods (TR 535, 548). Other impairments allegedly preventing Plaintiff from returning to work included asthma related shortness of breath and mental depression (TR 539).  Claimant explained that he became short of breath whenever he changed positions too quickly (TR 539, 544). Despite using inhalers several times a day to relieve his lung congestion (TR 545),

---

[1] Plaintiff injured his back at work, and subsequently settled a workers' compensation claim for $31,725 in May 2003 (TR 57).

2

Plaintiff continued to smoke a pack of cigarettes per day (TR 535). Claimant added that mental depression made him angry and resentful, and that he often heard voices telling him to "get even" (TR 540-541).

While Plaintiff alleged that he suffered from chronic fatigue, despite sleeping 11 hours a day, he acknowledged that he was able to drive as needed and shop for a small number of items (TR 530, 537). Claimant admitted that he recently purchased a 19 foot boat, which he planned to use for fishing (TR 536-537). Even though the claimant felt uncomfortable when around crowds of people (TR 101), he was able maintain a long term relationship with his girlfriend and belonged to a church group (TR 539).

A Vocational Expert (VE), Sharon Princer, classified Plaintiff's past work as medium to heavy, semiskilled activity (TR 553). The witness testified that if the claimant were capable of light work, there were numerous clerical, cashier, teacher's aide, inspection, assembly and sorting jobs that he could still perform with minimal vocational adjustment (TR 555-556). These simple, unskilled jobs did not require the climbing of scaffolds, ramps or stairs. They did not require more than occasional balancing, stooping, kneeling, crouching or crawling. Operation of hand and foot controls were kept to a minimum, and the jobs did not expose workers to dangerous machinery, unprotected heights or industrial pollutants (TR 554). The VE added that the number of jobs would be reduced, but not eliminated, if high production quotas and contact with the public and co-workers were required as work duties (TR 555-556). The VE estimated that there were still

3

7000 assembly, sorting and security monitoring jobs existing in the national economy that did not involve production quotas or public contact (TR 556-557).

## LAW JUDGE'S DETERMINATION

The Administrative Law Judge found that Plaintiff was impaired as a result of osteoarthritis of the right knee, chronic obstructive pulmonary disease, coronary artery disease and depression, but that he did not have an impairment or combination of impairments severe enough to meet or equal the Listing of Impairments. The ALJ recognized that Plaintiff was limited to unskilled work, but found that he retained the residual functional capacity to perform a significant number of light jobs,[2] as identified by the Vocational Expert.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has jurisdiction to review the Commissioner's decisions. Judicial

---

[2] Light work activity is defined as the ability to lift no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job in this category sometimes requires a good deal of walking or standing, or involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, a person must have the ability to do substantially all of these activities.  If someone can do light work, the Commissioner will also find that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404. 1567(b) (2004).

review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Kirk v. Secretary, 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). This court does not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. See Brainard v. Secretary, 889 F.2d 679, 681 (6th Cir. 1989); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. Kirk, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if even substantial evidence also supports the opposite conclusion, Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc), Casey v. Secretary, 987 F.2d 1230 (6th Cir. 1993), and even if the reviewing court would decide the matter differently, Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

Plaintiff maintains that substantial evidence does not exist on the record that he remains capable of performing a limited range of light work activity. He also argues that the ALJ improperly evaluated his credibility, and did not take into consideration all of his functional limitations. Defendant counters that the claimant retains the residual functional capacity for a

reduced range of light work because the objective clinical evidence of record did not confirm the disabling nature of his joint pain, asthma or mental depression.

## DISCUSSION AND ANALYSIS

A claimant's subjective allegations of disabling pain are insufficient, by themselves, to support a claim for benefits. Sizemore v. Secretary, 865 F.2d 709, 713 (6th Cir. 1988). Pain alone can be disabling if it is severe enough to preclude all substantial, gainful activity, but the symptoms must be substantiated by some objective, clinical or laboratory findings. Hurst v. Secretary, 753 F.2d 517, 519 (6th Cir. 1985). Where, as here, the claimant alleges disability as a result of severe pain, the Sixth Circuit has established a standard to evaluate those complaints. Under that standard, a claimant has the burden of providing objective evidence confirming the severity of the alleged pain, or establishing that the medical condition is of such a kind and severity that it could reasonably be expected to produce the allegedly disabling pain. Duncan v. Secretary, 801 F.2d 847, 853 (6th Cir. 1986), McCormick v. Secretary, 861 F.2d 998, 1002-1003 (6th Cir. 1988).

Substantial evidence existed on the record supporting the Commissioner's conclusion that Plaintiff retained the residual functional capacity for light work. Contrary to Plaintiff contention, the medical evidence failed to provide objective

support for Plaintiff's allegations of severe functional limitations stemming from his joint pain, breathing difficulties, heart condition or mental depression.

Six months after Plaintiff's alleged onset date of disability, Dr. Charles Lilly, a treating orthopedic surgeon, opined that the claimant could return to work as long as he avoided jobs requiring twisting, turning, heavy lifting or truck driving (TR 115). A consulting orthopedic examiner, Dr. Bruce Abrams, reported on April 10, 2002, that Plaintiff walked with a normal gait and had good range of knee motion. The doctor added that claimant's knee ligaments were stable, and there were no signs of effusion or crepitation (TR 512). Dr. Abrams opined that Plaintiff was able to return to full activity without restriction (TR 513).

Plaintiff's fatigue and shortness of breath would not interfere with the performance of light work activity. The medical evidence indicated that claimant's pulmonary disease was moderate with good response to bronchodilator medication (TR 396, 437). The ALJ also noted that Plaintiff was never hospitalized for treatment of the impairment, nor had he ever required the use of oxygen (TR 24). The Law Judge also took into consideration that the claimant continued to smoke, despite his doctors' repeated recommendation that he quit (TR 24, 475, 479). The ALJ reasonably restricted claimant to work environments that did not expose him to respiratory irritants, temperature extremes or humidity.

While claimant has had chest discomfort as a result of a blockage in one of the arteries leading to the heart (TR 140), the medical record indicated that cardiac symptoms were fairly well

7

controlled with a medication regimen. An echocardiogram conducted in August 2002, revealed normal cardiac chamber size and valve structures, no pericardial effusion, and a normal left ventricular ejection fraction (TR 125-127). Dr. Rodney Diehl, a treating cardiologist, reviewed the objective test results from numerous cardiac studies in April 2003, and concluded that Plaintiff was doing well from a cardiovascular standpoint (TR 475, 477). The physician noted that claimant had a regular heart rate and rhythm without a murmur, click or gallop (TR 477). Based on the relatively benign cardiac test results, the ALJ reasonably restricted claimant to a limited range of light work which did not involve walking more than two hours a day.

While Plaintiff was treated for periodic depression beginning in October 2002 (TR 353), medications reportedly improved his mood and helped lower his irritability[3] (TR 340). By September 2003, Plaintiff stated he was doing better after therapy. The claimant acknowledged feeling more energetic and better motivated (TR 460). Furthermore, Plaintiff indicated he slept well at night, and was not as tired during the day (TR 460). Dr. Robert Newhouse, a state agency psychiatrist, reviewed claimant's mental record and concluded that Plaintiff had only a mild restriction in daily living, and only mild difficulties in maintaining concentration, persistence and pace (TR 202). There was medical evidence on both sides and, having examined it, the undersigned cannot say that the

---

[3] An October 2002, mental status evaluation found that claimant achieved a Global Assessment of Functioning (GAF) score of 56, indicating only a moderate impairment in social or occupational functioning (TR 173).

Commissioner's conclusion was not supportable. In light of that evidence, the Commissioner could reasonably conclude that Plaintiff's subjective complaints of persistent, severe, totally disabling symptoms stemming from his joint pain, shortness of breath, chest discomfort and emotional problems were not fully credible[4].

It is the rare case, the exception, in which every piece of evidence points incontrovertibly toward a decision to deny benefits. There was evidence in the record which, taken in isolation, might suggest that the Plaintiff was totally disabled and that his testimony was fully credible. However, special deference is owed to the credibility finding of the ALJ, who was the only one who had the opportunity to observe the demeanor of the witness, evaluate what was said in light of how it was said, and to consider how that testimony fit in with the rest of the medical evidence. Such observation is invaluable and should not be discarded lightly. <u>Beavers v. Secretary</u>, 577 F.2d 383 (6th Cir. 1978). See also <u>Williamson v. Secretary</u>, 796 F.2d 146, 150 (6th Cir. 1986).

By establishing that he could not return to his past relevant work, the Plaintiff here effectively shifted to the Commissioner the burden of proving that he had the vocational qualifications to perform alternative jobs in the economy,

---

[4] Plaintiff asserts that his obesity was not properly considered by the ALJ, but he fails to indicate what additional limitations he believes he is entitled to as a result of his weight. Drs. Abrams, Lilly and Wessinger all considered claimant's weight when rendering their respective opinions that Plaintiff was capable of a limited range of light work (TR 513-514, 517).

notwithstanding his various impairments. The Commissioner, however, met her burden of proving the existence of jobs which accommodated claimant's known restrictions. In response to a hypothetical question that took into consideration claimant's educational and vocational background,[5] along with his significant impairments, the Vocational Expert testified that there were numerous clerical, cashier, teacher's aide, assembly, security monitor, inspection and sorting jobs that he could still perform with minimal vocational adjustment (TR 555-556). These simple, unskilled jobs did not require the climbing of scaffolds, ramps or stairs.  They did not require more than occasional balancing, stooping, kneeling, crouching or crawling. Operation of hand and foot controls were kept to a minimum, and the jobs did not expose workers to dangerous machinery, unprotected heights or industrial pollutants (TR 554). The VE added that the number of jobs would be reduced, but not eliminated, if high production quotas and contact with the public and co-workers were required as work duties (TR 555-556). The VE estimated that there were still 7000 assembly, sorting and security monitoring jobs existing in the national economy that did not

---

[5]Contrary to Plaintiff's assertion, the Law Judge's hypothetical question to the Vocational Expert (VE) accurately described his known limitations. The VE reduced the number of jobs previously identified in order to take into account claimant's inability to deal with the public and need for a clean air environment (TR 555-556). The Sixth Circuit recently held that hypothetical questions to experts are not required to included lists of claimant's medical conditions. <u>Webb v. Commissioner</u>, 368 F.3d 629, 633 (6th Cir. 2004). Under these circumstances, the ALJ's hypothetical question accurately portrayed Plaintiff's impairments.

involve production quotas or public contact[6] (TR 556-557). Given the objective clinical findings of the examining physicians of record, substantial evidence existed on the record that Plaintiff retained the residual functional capacity for a restricted range of light work activity.

In sum, the Commissioner's decision to deny benefits was within the range of discretion allowed by law and there is insufficient evidence for the undersigned to find otherwise. Accordingly, Plaintiff's Motion for Summary Judgment should be denied, that of Defendant granted, and the instant Complaint dismissed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981), <u>Thomas v. Arn</u>, 474 U.S. 140 (1985), <u>Howard v. Secretary of HHS</u>, 932 F.2d 505 (6th Cir. 1991). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. <u>Smith v. Detroit Fed'n of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987), <u>Willis v.</u>

---

[6]In <u>Hall v. Bowen</u>, 837 F.2d. 272 (6th Cir. 1988), the court determined that 1,350 jobs existing in the local economy was a sufficient number allowing the Commissioner to meet her burden that the claimant had the vocational qualifications to perform alternative jobs, notwithstanding his various impairments

11

Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to Rule 72.1 (d)(2) of the Local Rules of the United States District Court for the Eastern District of Michigan, a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limits are extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                  s/Donald A. Scheer
                                                  DONALD A. SCHEER
                                                  UNITED STATES MAGISTRATE JUDGE
DATED: May 31, 2005

---

### CERTIFICATE OF SERVICE

I hereby certify on May 5, 2005 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on May 5, 2005. None.

                                                  s/Michael E. Lang
                                                  Deputy Clerk to
                                                  Magistrate Judge Donald A. Scheer
                                                  (313) 234-5217